**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**RICHARD WILLIAMS,**

              Petitioner,         13 Cv. 7779 (JGK)

     - against -               MEMORANDUM OPINION AND
                                                                                   ORDER

**SUPERINTENDENT STEVEN RACETTE,**

              Respondent.
------------------------------------

**JOHN G. KOELTL, District Judge:**

    Richard Williams filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent Steven Racette, Superintendent at Great Meadow Correctional Facility, moves to dismiss the petition as time-barred. For the reasons explained below, the respondent's motion to dismiss is granted.

**I.**

    Williams was convicted after a jury trial in the New York State Supreme Court, New York County, for murder in the second degree of Roy Evans and criminal possession of a weapon in the second degree. Williams was sentenced to concurrent indeterminate prison terms of twenty-five years to life for murder and seven and one-half years to fifteen years for criminal possession of a weapon. Judgment was entered on March 15, 1995.

At Williams's trial, the State largely relied on the testimony of James Minor and Sharon Hatcher. Minor testified that he watched Williams shoot Evans, and Hatcher testified that Williams had told her that he shot Evans. Chanda Affirm. 2-5. A medical examiner testified that the trajectory of the bullet that hit Williams was consistent with Minor's account of the shooting. Chanda Affirm. Ex. PP, at 16. Minor and Hatcher, who had been arrested independently for selling drugs, received favorable plea agreements in exchange for testifying truthfully at Williams's trial. Pet. Ex. C; Pet. Ex. D. Minor and Hatcher were questioned at length about these agreements at trial. Chanda Affirm. Ex. PP, at 5; Pet. Ex. D.

Williams filed a notice of appeal pro se in the Appellate Division, First Department in October 1995. The Appellate Division granted Williams leave to appeal in forma pauperis and assigned him counsel. In September 1998, the Appellate Division affirmed the judgment of the trial court. People v. Williams, 677 N.Y.S.2d 761 (App. Div. 1998). Chief Judge Kaye of the New York Court of Appeals denied leave to appeal on December 30, 1998. People v. Williams, 707 N.E.2d 461 (1998). Williams did not file a petition for a writ of certiorari with the United States Supreme Court.

On November 4, 1999, Williams filed a petition for habeas relief under § 2254 in this District. See Williams v. Walker,

No. 99cv11065 (S.D.N.Y. Nov. 4, 1999).  The district court directed Williams to file an amended petition removing the unexhausted claims or to withdraw his petition without prejudice.  On December 28, 1999, the district court dismissed the petition without prejudice to filing a new petition within the one-year limitations period.

On December 21, 1999, Williams filed a pro se motion to vacate his conviction pursuant to section 440.10 of the New York Criminal Procedure Law in the New York State Supreme Court, New York County.  The court denied the petition on January 27, 2001.  Williams sought leave to appeal to the Appellate Division, First Department on July 8, 2002, which was denied on August 29, 2002.  On May 21, 2003, Williams sought leave to renew his appeal, which was denied on June 26, 2003.

On January 9, 2004, Williams filed a second pro se motion to vacate his conviction under section 440.10 in the New York State Supreme Court.  On May 13, 2014, the court denied the petition.  On June 8, 2004, Williams sought leave to appeal to the Appellate Division, which was denied on September 9, 2004.

On January 14, 2005, Williams, pro se, sought a writ of error coram nobis from the Appellate Division.  On July 14, 2005, the Appellate Division denied the application.  Williams sought leave to appeal on August 9, 2005, which Judge Rosenblatt of the New York Court of Appeals denied on September 28, 2005.

3

On December 20, 2005, Williams filed a third pro se motion to vacate his conviction under section 440.10 in the New York State Supreme Court. The court denied the petition on December 22, 2006. On February 6, 2007, Williams sought leave to appeal to the Appellate Division, which was denied on March 27, 2007.

On June 26, 2008, Williams filed a fourth pro se motion to vacate his conviction under section 440.10 in the New York State Supreme Court. The court denied the motion on February 9, 2009. On March 12, 2009, Williams sought leave to appeal to the Appellate Division, which was denied on April 30, 2009.

On February 12, 2009, Williams filed a fifth pro se motion to vacate his conviction under section 440.10(1)(g) in the New York State Supreme Court.[1] Williams attached an affidavit dated August 12, 2008, from Everette Cruse, whom Williams had become reacquainted with while incarcerated at Great Meadow

---

[1] Section 441.10(1)(g) provides:
At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that . . . [n]ew evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence . . . .

4

Correctional Facility.  Pet. Ex. A.  New York City detectives had interviewed Cruse in connection with Evans's murder, but the State did not call Cruse as a witness at Williams's trial.  In his 1993 statement to the police, Cruse said that Williams had told him that "the [p]olice [were] looking for [Williams] about a killing, something to do with killing [Evans]."  Chanda Affirm. Ex. MM, at Sub-Ex. B.  In his recanting affidavit, Cruse stated that he, Hatcher, and Minor "got together [in] April 1993 and decided to use [Evans's] death as a means to get out of prison if we were ever arrested for anything" and that Cruse's 1993 statement to the police was untrue.  Pet. Ex. A.

The State opposed the motion and included an affirmation from Mao Yu Lin, an Assistant District Attorney for New York County.  In his affirmation, Lin explained that he met with Cruse to discuss the information in Cruse's affidavit.  In the interview with Lin, Cruse stated that he had signed the affidavit submitted by Williams and that the information in the affidavit was true.  Chanda Affirm. Ex. NN, at ¶ 17.  However, Cruse denied that he, Hatcher, and Minor had plotted to frame Williams and denied that Hatcher and Minor planned to give false information to the police.  Id.  Rather, Cruse explained that he, Hatcher, and Minor considered their knowledge of Evans's death as a "get out of jail card."  Id.  Cruse also said that he had no personal information about who had killed Evans, but that

5

Hatcher and Minor would be in the best position to know who did. Id.

On December 20, 2011, the New York Supreme Court denied Williams's motion. It held that the affidavit was not newly discovered evidence, was unreliable, was cumulative with other trial testimony, contained evidence that could have been discovered before trial, and would not have changed the result at trial. On February 2, 2011, Williams sought leave to appeal to the Appellate Division, which was denied on October 25, 2012.

Williams filed this petition for habeas corpus relief under § 2254, dated September 19, 2014, alleging claims of actual innocence, ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and a due process violation arising from the trial court's jury instructions. The respondent moved to dismiss the petition as time-barred under the one-year statute of limitations in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d).

**II.**

**A.**

AEDPA imposes a one-year statute of limitations on federal habeas corpus petitions by persons in custody pursuant to state court judgments. Id. § 2244(d)(1)(A). The one-year period generally runs from the date on which the judgment becomes final by the conclusion of direct review or the expiration of time to seek such review, including the time to seek a writ of certiorari from the United States Supreme Court. See Jimenez v. Quarterman, 555 U.S. 113, 119 (2009).[2]

The New York Court of Appeals denied Williams leave to appeal on December 30, 1998. Accordingly, the judgment became final on March 28, 1999—the expiration of the ninety-day period during which the petitioner could have sought a writ of certiorari from the United States Supreme Court. See Williams v. Artuz, 237 F.3d 147, 150–51 (2d Cir. 2001).

---

[2] The petitioner does not rely on § 2244(d)(1)(D), which provides that the limitations period may begin on "the date on which the factual predicate of the claim . . . presented could have been discovered through the exercise of due diligence." As the New York State Supreme Court explained, "the evidence offered by Cruse could have been discovered [before trial] by the defendant with due diligence. [Williams] . . . knew Cruse from the neighborhood, knew where he lived, [] stayed with Cruse for some time . . ., [and] knew at least a year before the trial that Cruse was interviewed by police as a possible trial witness." Chanda Affirm. Ex. PP, at 12.

7

AEDPA tolls the statute of limitations during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment." § 2244(d)(2). While the tolling provision may exclude the time during which a properly filed application for state court relief is pending, it does not reset the date from which the one-year statute of limitations begins to run. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam); see also Ramos v. Walker, 88 F. Supp. 2d 233, 236 (S.D.N.Y. 2000). As the Court of Appeals for the Second Circuit explained: "If the one-year period began anew when the state court denied collateral relief, then state prisoners could extend or manipulate the deadline for federal habeas review by filing additional petitions in state court." McGinnis, 208 F.3d at 17; see also Montalvo v. Strack, No. 99cv5087, 2000 WL 718439, at *2 (S.D.N.Y. June 5, 2000).

Excluding the time when the section 440.10 motions and the application for a writ of error coram nobis were pending, Williams filed this petition well after the one-year deadline. Indeed, he filed his fourth section 440.10 motion over one year after he was denied leave to appeal his third section 440.10 motion.

**B.**

Williams argues that he should be granted an equitable exception to the statute of limitations based on the actual

8

innocence doctrine. In exceptional cases, the actual innocence doctrine provides petitioners a gateway to present an otherwise untimely habeas petition. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1930-34 (2013). "It is the combination of the two claims—that the petitioner is likely innocent and that his conviction was likely the result of nonharmless constitutional error—that permits a habeas court to review the petition notwithstanding procedural obstacles in order to avoid a miscarriage of justice." Rivas v. Fischer, 687 F.3d 514, 540-41 (2d Cir. 2012).

In order to establish an actual innocence claim, Williams must provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). Further, Williams must show "that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006). This requirement is demanding and permits review only of the extraordinary case. Schlup, 513 U.S. at 324 ("[C]laims of actual innocence are rarely successful.").

Williams has not demonstrated, in light of Cruse's affidavit, "that more likely than not any reasonable juror would have reasonable doubt" of Williams's guilt. House, 547 U.S. at

9

538.[3]  Cruse did not claim that Hatcher lied when she testified that Williams confessed to shooting Evans, or that Minor lied when he testified that he watched Williams shoot Evans.  At best, the Cruse affidavit states that Cruse lied when he told the police that Williams said that "the [p]olice [were] looking for [Williams] about a killing, something to do with killing [Evans]."  Chanda Affirm. Ex. MM, at Sub-Ex. B; see also Pet. Ex. A.  Any reasonable juror would give little or no weight to the fact that Cruse—who did not testify at trial and did not witness the shooting—recanted his fifteen-year-old statement.

Cruse did mention Hatcher and Minor in his affidavit, but he simply stated that he, Hatcher, and Minor "got together [in] April 1993 and decided to use [Evans's] death as a means to get out of prison" and that Hatcher and Minor were "upset" with Williams.  Pet. Ex. A.  When interviewed by Assistant District Attorney Lin, Cruse denied that he, Minor, and Hatcher conspired "to frame [the] defendant with Roy Evan's murder" or that he provided "fabricated" information to the police.  Chanda Affirm Ex. NN, at ¶ 17.  This is not new evidence.  Both Hatcher and Minor were questioned at trial concerning the plea agreements

---

[3]  Nor is Williams entitled to equitable tolling.  Williams does not allege "that he has been pursuing his rights diligently," or "that some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

10

that they received in exchange for testifying.  Chanda Affirm. Ex. PP, at 5; Pet. Ex. D.

Moreover, the affidavit is not reliable.  "It is axiomatic that witness recantations 'must be looked upon with the utmost suspicion.'"  Haouari v. United States, 510 F.3d 350, 353 (2d Cir. 2007) (quoting Ortega v. Duncan, 333 F.3d 102, 107 (2d Cir. 2003)).  The affidavit here is particularly suspect, because it was written fifteen years after Cruse made his statement to the police, and it was submitted at Williams's request.  Williams's actual innocence claim is neither credible nor compelling.  Accordingly, he is not entitled to an equitable exception to the one-year statute of limitations.  The petition is therefore time-barred.

## CONCLUSION

For the foregoing reasons, the respondent's motion to dismiss is **granted**.  The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A) because Williams has failed to make a substantial showing of the denial of a constitutional right.  The Clerk is directed to enter

11

judgment in favor of the respondent, to close all pending motions, and to close this case.

**SO ORDERED.**

**Dated:   New York, New York
          October 14, 2014**                  _____/s/_____
                                                   **John G. Koeltl
                                              United States District Judge**